IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

**v.** **Criminal No. 3:15cr195**

**MUNTASIR RASHID,**

**Defendant.**

# MEMORANDUM OPINION

This matter comes before the Court on Defendant Muntasir Rashid's *pro se* Motion for Compassionate Release (the "Motion" or the "Motion for Compassionate Release"). (ECF No. 49). The United States responded in opposition, (ECF No. 51), and Mr. Rashid did not reply.

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons articulated below, the Court will deny the Motion.

## I. Background

On December 15, 2015, a grand jury charged Mr. Rashid with two counts of sex trafficking of children in violation of 18 U.S.C. § 1591(a)(1) (Counts One and Three); two counts of transportation of a minor for prostitution in violation of 18 U.S.C. § 2423(a) (Counts Two and Four); and one count of transportation of an individual for prostitution in violation of 18 U.S.C. § 2421 (Count Five). (ECF No. 1.) On February 8, 2016, Mr. Rashid pled guilty to Counts One and Three without the benefit of a plea agreement. (ECF No. 19.) In connection with his plea, Mr. Rashid signed an agreed Statement of Facts describing the conduct underlying his offenses. (ECF No. 20.)

Prior to Mr. Rashid's sentencing, the United States Probation Office prepared a Presentence Report ("PSR"). (ECF No. 24.) The PSR reported a Total Offense Level of 33 and a criminal history score of zero, resulting in a criminal history category of I and yielding a sentencing guidelines range of 135 to 168 months of incarceration, followed by five years of supervised release. (ECF No. 24 ¶ 81.)

On June 9, 2016, the Court sentenced Mr. Rashid to a total of 150 months' imprisonment—a within-Guidelines term in the middle of the advisory range—followed by five years of supervised release on each count, to run concurrently. (ECF No. 31, at 2.)

On July 17, 2020, Mr. Rashid filed his first Motion for Compassionate Release, through counsel, seeking release to "commence his five-year term of supervised release" or transfer to home confinement, (ECF No. 40, at 2), in light of his "increased risk for severe illness from COVID-19" due to his medical conditions (asthma, hypertension, latent tuberculosis, significant mental health disorders, and being prescribed an immunosuppressant), his race, conditions at FCI Danbury, and his low risk of recidivism. (ECF No. 40, at 1–2, 5–17, 24–27); *see* 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a). On September 14, 2020, the Court denied Mr. Rashid's Motion for Compassionate Release finding that Mr. Rashid's "risk of contracting the virus, when balanced [ ] with [his] criminal history, do not justify releas[e]." (ECF No. 48, at 5.)

On February 11, 2022, Mr. Rashid filed the instant Motion for Compassionate Release. (ECF No. 49.) On June 23, 2026, this case was reassigned from the Honorable Henry E. Hudson to the Honorable M. Hannah Lauck. (ECF No. 54.) Mr. Rashid's current release date is December 21, 2026.[1]

---

[1] *See* Fed. Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Sep. 30, 2026).

## II. Standard of Review

18 U.S.C. § 3582(c)(1)(A) authorizes a defendant, after exhausting their administrative remedies with the Bureau of Prisons ("BOP"), to move a court for compassionate release. A court considering a motion for compassionate release proceeds in two steps. First, the court "determines whether the defendant is eligible for a sentence reduction." *United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024). To be eligible, the court must find that relief is warranted because of "extraordinary compelling reasons," and that such relief is "consistent with applicable policy statements" issued by the United States Sentencing Commission (the "Sentencing Commission"). 18 U.S.C. § 3582(c)(1)(A)(i); *Moody*, 115 F.4th at 310. The Sentencing Commission's policy statement identifies six categories of extraordinary and compelling reasons that may allow for a sentence reduction. *See* U.S.S.G. § 1B1.13(b).[2]

Second, if the court finds that extraordinary and compelling reasons exist, the "court considers whether the 18 U.S.C. § 3553(a) sentencing factors support relief." *Moody*, 115 F.4th at 310.

## III. Analysis

Mr. Rashid argues that the Court should reduce his sentence, or in the alternative serve the remainder of his term on home confinement because: (1) he is particularly susceptible to severe illness from COVID-19 because of his medical conditions (severe asthma, latent tuberculosis, hypertension, and being prescribed immunosuppressant) and his race; (2) the

---

[2] Such circumstances include: (1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated; (2) the defendant's age; (3) the defendant's family circumstances; (4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer; (5) "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)"; and, (6) the defendant's receipt of an "unusually long sentence." U.S.S.G. § 1B1.13(b)(1)–(6).

conditions of confinement at FCI Danbury during the pandemic have rendered his incarceration more punitive than the Court intended at sentencing; (3) those conditions violate the Eighth Amendment's prohibition on cruel and unusual punishment; and (4) his post-sentencing rehabilitation and changed circumstances warrant relief. (ECF No. 49, at 1–4.) The United States opposes Mr. Rashid's Motion, contending that Mr. Rashid has not established an extraordinary and compelling reason for sentence reduction and that the § 3553(a) factors weigh decisively against release. (ECF No. 51.) For the reasons articulated below, the Court will deny the Motion.

The Court finds that (1) Mr. Rashid's asserted susceptibility to COVID-19 is not an extraordinary and compelling reason for compassionate release; (2) the reported pandemic-era conditions of confinement are not an extraordinary and compelling reason, and his conditions-based Eighth Amendment claim is not cognizable on a motion for compassionate release; and (3) Mr. Rashid's rehabilitation standing, alone, is not an extraordinary and compelling reason for compassionate release. Accordingly, the Court concludes that Mr. Rashid does not offer any extraordinary and compelling reasons to support his request for release. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Even if he had done so, the § 3553(a) factors weigh against his release.

### A. Mr. Rashid Has Exhausted, or Is Excused From Exhausting, His Administrative Remedies

A defendant seeking compassionate release ordinarily must first apply to the BOP to bring a motion on his or her behalf. 18 U.S.C. § 3582(c)(1)(A). After seeking relief from the BOP, a defendant can proceed to district court if he or she exhausts their administrative remedies for relief with the BOP, or if the BOP fails to act within 30 days of the defendant's requesting such relief. *Id.*; *United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022).

The United States does not contend that Mr. Rashid failed to exhaust his administrative remedies before filing this second motion for compassionate release. Instead, the United States responds on the merits. (ECF No. 51.) Because the United States declined to press the requirement, the Court deems any exhaustion defense waived.[3]

The Court therefore proceeds to consider the merits. *See* 18 U.S.C. § 3582(c)(1)(A); *Muhammad*, 16 F.4th at 130.

### B. The Motion Does Not Establish Extraordinary and Compelling Reasons for Mr. Rashid's Release

Mr. Rashid moves for compassionate release under U.S.S.G. under § 1B1.13(b)(1)(D), which treats the risk posed by an infectious disease as extraordinary and compelling only where the defendant is housed at a facility "affected or at imminent risk of being affected by" an ongoing outbreak or a declared public health emergency, the defendant faces an increased risk of severe complications from exposure, and "such risk cannot be adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1)(D).

Mr. Rashid first contends that he is particularly vulnerable to severe illness from COVID-19 because he suffers from severe asthma, latent tuberculosis, hypertension, and a suppressed immune system, and because his race makes him more likely to become seriously ill while he is incarcerated at FCI Danbury. (ECF No. 49, at 1, 4.) In *Hargrove*, the United States Court of Appeals for the Fourth Circuit noted that "[district] courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to [COVID-19] and a particularized risk of contracting the disease at his prison

[3] In any event, on April 29, 2020, Mr. Rashid submitted a request for compassionate release to the warden of his institution. The warden denied that request in early May 2020. (ECF No. 51, at 3–4 & n.1.) Therefore, the exhaustion requirement is clearly satisfied. 18 U.S.C. § 3582(c)(1)(A).

facility." *United States v. Hargrove*, 30 F.4th 189, 196 (4th Cir. 2022) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020)). Based on the present record, Mr. Rashid does not satisfy these requirements. At most, Mr. Rashid has established this his existing medical conditions and race "*might* place him at greater risk of serious illness or death from COVID-19." *Id.* Because he has "only established that his risk *might* [be] increase[d]," he has "not establish[ed] an extraordinary and compelling reason for immediate release." *Id.* (brackets and emphasis in original) (quotation omitted).

Mr. Rashid does not have a particularized risk of contracting COVID-19 at FCI Danbury because there is no ongoing outbreak at that institution. Previously, FCI Danbury had an outbreak in which 86 inmates tested positive for COVID-19, but by September 2020, there were no active cases of COVID-19. (ECF No 48, at 5.) As of late November 2023, FCI Danbury reported only three active cases of COVID-19 among a population of nearly one thousand and had returned to ordinary operations, with programming, recreation, and visitation restored to normal capacity. (ECF No. 51, at 3, 7–8.) This suggests the steps FCI Danbury and the Bureau of Prisons have taken to curb the outbreak have been successful. (ECF No. 48, at 5.)

The most recent data from January 21, 2025, reports zero active cases at FCI Danbury out of a population of over one thousand.[4] Further, the federal government declared an end to the COVID-19 public health emergency on May 11, 2023.[5] Therefore, the Court cannot find that there is an "ongoing outbreak of infectious disease" or that an "ongoing public health emergency" exists at FCI Danbury that would satisfy requirements under § 1B1.13(b)(1)(D).

---

[4] Fed. Bureau of Prisons, *Inmate COVID-19 Data*, (last visited Sep. 16 , 2026), https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp.

[5] Ctr. for Disease Control, *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, https://archive.cdc.gov/www_cdc_gov/coronavirus/2019-ncov/your-health/end-of-phe.html (last visited Oct. 6, 2026).

Second, even assuming Mr. Rashid's medical conditions place him within a higher-risk category, the risk he identifies can be—and has been—mitigated. Mr. Rashid is fully vaccinated against COVID-19 and has received a booster: he received the first and second doses of the Moderna vaccine on April 20 and May 18, 2021, and a Pfizer-BioNTech booster on February 10, 2022. (ECF No. 51-2, at 1–2.) Because that vaccination substantially reduces both the likelihood of infection and the severity of any resulting illness, the residual risk "can[] be adequately mitigated in a timely manner," and the third requirement of § 1B1.13(b)(1)(D) is not met. U.S.S.G. § 1B1.13(b)(1)(D)(iii). Courts have consistently concluded that a defendant's access to vaccination forecloses a finding that the risk of COVID-19 is an extraordinary and compelling reason for release. *See, e.g.*, *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021); *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).

The Court therefore concludes that Mr. Rashid's asserted susceptibility to COVID-19 does not constitute an extraordinary and compelling reason to reduce his sentence and will deny his Motion with respect to that argument.

**2. <u>The Pandemic-Era Conditions of Confinement Do Not Constitute an Extraordinary and Compelling Reason for Release</u>**

Mr. Rashid next contends that the lockdown conditions at FCI Danbury during the pandemic rendered his incarceration harsher and more punitive than the Court intended at sentencing, and that the Court would account for that hardship if it were sentencing him today. (ECF No. 49, at 2–3.) He relies on a decision out of the Southern District of New York reached in 2020, at the height of the pandemic, that reduced a sentence in part because pandemic conditions had made the defendant's incarceration "harsher and more punitive" than anticipated. *See United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020).

That argument does not establish an extraordinary and compelling reason on this record. As discussed above, the conditions Mr. Rashid describes were a product of the pandemic, and the record reflects that those conditions have since abated: FCI Danbury has returned to normal operations, and the restrictions on programming, recreation, and visitation that Mr. Rashid challenges are no longer in place. (ECF No. 51, at 7–9; *see* ECF No. 48, at 5.)[6] The premise of the hardship argument—ongoing, atypical pandemic restrictions—is therefore absent.

To the extent Mr. Rashid instead challenges the conditions of his confinement directly—contending that the conditions at FCI Danbury are "inhumane" and violate the Eighth Amendment—that claim is not cognizable on a motion for compassionate release. *United States v. Williams*, No. CR ELH-17-336, 2023 WL 2914801, at *1 (D. Md. Apr. 11, 2023); *United States v. Madison*, No. CR JKB-21-0037, 2024 WL 4278742, at *2 (D. Md. Sep. 24, 2024) (noting that a "motion for compassionate release is not the proper vehicle for an Eighth Amendment claim, and the Eighth Amendment protections and standards are not applicable to the compassionate release analysis under § 3582(c)"). A challenge to the conditions of confinement attacks the manner in which a sentence is being carried out, not the extraordinary and compelling circumstances that may justify reducing it, and must be pursued through the appropriate civil vehicle rather than under [§] 3582(c)(1)(A). *See Williams*, 2023 WL 2914801, at *1; *Madison*, 2024 WL 4278742, at *2. The Court expresses no view on the merits of any such claim.

---

[6] In ruling on Mr. Rashid's counseled Motion for Compassionate Release, (ECF No. 40), the Court found that conditions at FCI Danbury did not warrant compassionate release, even when the pandemic was more virulent. (ECF No. 48, at 5.) Mr. Rashid's *pro se* Motion for Compassionate Release, (ECF No. 49), presents no new evidence warranting a different finding.

The Court therefore concludes that the "pandemic-era" conditions of confinement, at FCI Danbury do not constitute an extraordinary and compelling reason to reduce Mr. Rashid's sentence and will deny his Motion with respect to that argument.

### 3. Mr. Rashid's Rehabilitation Alone Does Not Constitute an Extraordinary and Compelling Reason for Release

As explained above, the Court concludes that Mr. Rashid has not otherwise established an extraordinary and compelling reason to reduce his sentence. Mr. Rashid next turns to his rehabilitation as a justification for compassionate release. The Sentencing Commission's policy statement with respect to compassionate release motions provides that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of [the] policy statement." U.S.S.G. § 1B1.13(d). Rather, "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances." *Id.* Because Mr. Rashid has not established other extraordinary and compelling reasons to reduce his sentence, his rehabilitation alone cannot serve as a basis for compassionate release.[7]

The Court therefore concludes that Mr. Rashid's rehabilitation alone cannot constitute an extraordinary and compelling reason to reduce his sentence and will deny his Motion with respect to that argument.

[7] Mr. Rashid proceeds *pro se* and has not submitted documentary proof—such as program certificates or his disciplinary record—corroborating the rehabilitative efforts described in his Motion. The United States' filing reflects that Rashid has completed several educational courses and is enrolled in an apprenticeship. (ECF No. 51, at 8–9; ECF No. 51-3, at 1–2.) The Court credits that conduct in its § 3553(a) analysis below but notes that rehabilitation, standing alone, cannot supply the threshold extraordinary and compelling reason. U.S.S.G. § 1B1.13(d).

### C. <u>The § 3553(a) Factors Do Not Support Compassionate Release</u>

Even assuming that Mr. Rashid presented an extraordinary and compelling circumstance, the § 3553(a) factors weigh against his release. In the interest of creating a full record, the Court discusses those factors here.

The § 3553(a) factors include:

- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);
- the need for the sentence to: reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment, § 3553(a)(2)(A)–(D);
- the kinds of sentences available, § 3553(a)(3), (4);
- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);
- the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and,
- the need for restitution, § 3553(a)(7).

District courts enjoy "broad discretion" in analyzing the § 3553(a) factors when considering a motion for compassionate release. *United States v. Burleigh*, 145 F.4th 541, 548 (4th Cir. 2025) (quoting *United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022) (quotation omitted)). "[D]istrict courts are only required to address the § 3553(a) factors 'to the extent that they are applicable.'" *Id.* (quoting § 3553(a)).

First, the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1), do not support reducing his term of imprisonment. Mr. Rashid trafficked two children—ages fifteen and seventeen—and one adult for commercial sex over the course of roughly a week, rented and paid for the hotel rooms in which the victims were prostituted, directed and assisted in advertising the victims for sex on the internet, and took half of their earnings. (ECF No. 20 ¶¶ 3–8, 11–12.) He

transported a juvenile across state lines for that purpose, purchased fraudulent identification documents for the fifteen-year-old, and, according to the PSR, physically assaulted her, leaving marks on her neck. (ECF No. 24 ¶¶ 6, 10.) The sexual exploitation of children for profit is among the most serious offenses this Court sees, and the gravity of this conduct weighs heavily against any reduction.

Next, Mr. Rashid's history and characteristics, § 3553(a)(1), do not tip the balance in his favor. The Court credits the rehabilitative steps Mr. Rashid describes—his completion of educational and parenting programming, his enrollment in an apprenticeship, and his work as the head orderly of his housing unit. (ECF No. 49, at 4; ECF No. 51, at 8–9.) Those efforts are commendable. Although Mr. Rashid came before the Court with a Criminal History Category of I, he had outstanding warrants in two states at the time of sentencing, including a New Jersey warrant arising from conduct—engaging in and promoting prostitution—closely resembling the offenses of conviction. (ECF No. 24 ¶¶ 46–47.)[8]

The Court must also consider the need for the sentence to protect the public and to afford adequate deterrence. § 3553(a)(2)(A), (C). Mr. Rashid's offense conduct—his repeated, organized exploitation of minors for profit—and his possible prior prostitution-related conduct demonstrate a willingness to exploit vulnerable individuals for financial gain that continues to weigh against release. Mr. Rashid's proposed release plan does not allay that concern. In Mr. Rashid's first Motion for Compassionate Release, filed on July 17, 2020, he proposes to serve the remainder of his term on home confinement with his sister, who works at a hospital, and his

[8] The record is in conflict regarding the status of these warrants. Mr. Rashid represents that the New Jersey warrant has been cleared and removed and that counsel is working to resolve the remaining South Carolina matter. (ECF No. 49, at 3–4.) The United States responds that Mr. Rashid's most recent progress report, dated September 3, 2023, still shows the warrants as active. (ECF No. 51, at 12.)

adult niece, a college student who is also employed. (ECF No. 40, at 24.) As the Court observed in denying Mr. Rashid's first motion, that plan supplies no greater protection for the public, and the record does not establish that it would meaningfully reduce any risk Mr. Rashid presents.

On balance, the § 3553(a) factors do not outweigh the continuing need for the sentence imposed to reflect the seriousness of the offense for which Mr. Rashid was sentenced. Accordingly, Mr. Rashid has not shown that the § 3553(a) factors support a reduction in his sentence or release from imprisonment.

## IV. Conclusion

For the reasons articulated above, the Court will deny Mr. Rashid's *pro se* Motion for Compassionate Release. (ECF No. 49.)

An appropriate Order shall issue.

Date: 10/20/2026
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge